UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JILL S. N. SCHAFFER, and CALLISSA A. SCHAFFER,<br><br>Plaintiffs,<br><br>vs.<br><br>BRYAN BERINGER, in his individual capacity;<br>JACY NELSEN, in her individual capacity;<br>JESSICA WADE, in her individual capacity;<br>MARK FOLEY, in his individual capacity; and<br>MATT BETZEN, individually and in his official capacity;<br><br>Defendants. | 4:14-CV-04138-KES<br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Jill and Callissa Schaffer, plaintiffs, initiated this suit pursuant to 42 U.S.C. § 1983 alleging that defendants, members of the Vermillion, South Dakota, Police Department, violated their constitutional rights. Docket 1. Pending are cross-motions for summary judgment. Plaintiffs move for partial summary judgment on Counts I, II, IV, and V of their complaint. Docket 32. Defendants jointly move for summary judgment on all of plaintiffs' claims. Docket 36. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment.

**BACKGROUND**

The undisputed facts are:

On May 30, 2014, Callissa was driving a vehicle with two passengers, one of whom was the vehicle's owner. Officer Foley stopped the vehicle for improperly lit taillights. After approaching the vehicle, Foley recognized Lee Sappingfield as the owner of the vehicle (at the time seated in the back seat) from a stop that occurred the night before for the same taillight infraction. Foley asked Callissa for her driver's license. Callissa responded that she did not have it with her, but stated that she did have a valid South Dakota driver's license. Additionally, Callissa provided her date of birth indicating that she was eighteen-years-old at the time.

Foley detected a strong odor of alcohol emanating from within the vehicle. He returned to his patrol car where he checked Callissa's driving status records. Foley informed dispatch about the odor of alcohol and requested assistance from other officers. Foley was asked via radio if the driver of the vehicle had been drinking, and he responded that he was unable to tell. Officers Delgado and Beringer arrived on the scene a few minutes later.[1]

Foley returned to the stopped vehicle and asked Callissa to step outside and accompany him to the vehicle's rear. He told Callissa that he could smell alcohol and asked if she had been drinking. She replied that she had not. Foley asked if Callissa would submit to a breath test, which she refused. Foley asked again if Callissa had been drinking, which she again denied. Callissa asked if

---

[1] Officer Delgado is not a party to this litigation.

she could call her mother, Jill, and Foley responded that it would not be necessary. Callissa nonetheless called Jill, and Jill arrived on the scene shortly after.

Prior to Jill's arrival, Officer Beringer spoke with the front-seat passenger, later identified as Marilyn Wingo. Wingo admitted to consuming alcohol that evening and that she was seventeen-years-old. The officers subsequently determined that Sappingfield had also consumed alcohol, although he was of legal age.

Upon Jill's arrival, she exited her vehicle, shouted that the officers did not have probable cause, and stated that she was a lawyer. She informed the officers that she was Callissa's attorney. The officers responded that the stop was permissible, and told Jill to step aside. Jill asked the officers to explain the situation. Jill also asked several times for the officers to explain specifically what about Callissa suggested that she used alcohol. The officers explained that both passengers admitted to consuming alcohol, that the car smelled of alcohol, and that they had not yet determined if Callissa had consumed alcohol. Jill responded that the vehicle did not smell like alcohol and again stated that the officers did not have probable cause.

After several minutes, Sergeant Nelsen and Officer Wade arrived on the scene. Nelsen spoke with Jill. A similar conversation about probable cause, the vehicle stop, and Callissa took place. Nelsen informed Jill that she needed to let the officers do their job or she would be arrested.

Callissa was asked again if she would submit to a breath test. She asked

about her other options, and was told that she could be detained and taken to the police department while the officers sought a search warrant. Callissa was told that she would not be taken to jail, but would be held in an interview room. Additionally, the officers explained that she would be placed in handcuffs while she was transported. Callissa refused to submit to the breath test. She was placed in handcuffs and frisked by Wade before being placed in a patrol car. Callissa was then transported to the Vermillion police station. Wingo, who had also refused to submit to the breath test, was placed in another patrol car and transported to the police station as well.

At the police station, Callissa was placed in a room with Wingo and Wade while Foley sought a search warrant. Jill arrived at the police station and asked to see Callissa. While Wingo was in the interview room, Jill was not permitted to be present. While Foley attempted to obtain the search warrant, Callissa was asked if she would submit to a breath test and she refused. Wingo subsequently agreed to take the breath test, which revealed her blood alcohol content to be 0.21 percent. Wingo was eventually released, and Jill was permitted to enter at that time. After the search warrant was issued, Callissa agreed to take the breath test. The test indicated that her blood alcohol level was 0.00 percent.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this

burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a factual dispute that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

### I. Officers Foley, Beringer, Wade, and Nelsen

Counts 1 through 12 of plaintiffs' complaint are brought against defendants Foley, Beringer, Wade, and Nelsen in their individual capacities. Foley, Beringer, Wade, and Nelsen contend that they are entitled to qualified immunity on each of plaintiffs' claims against them. Section 1983 provides a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of

a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983.[2] The doctrine of qualified immunity, however, generally shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Because qualified immunity provides immunity from suit and not merely a defense to liability, "it is important that the question of qualified immunity be resolved as early as possible in the proceedings." *Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012) (citations omitted). To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two factors in either order. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). But "[t]o deny the officers qualified immunity, [the court] must resolve both questions in [the plaintiff's]

---

[2] Defendants do not dispute that they were operating under color of state law during the events that gave rise to each of plaintiffs' claims.

favor." *Hawkins v. Gage Cty., Neb.*, 759 F.3d 951, 956 (8th Cir. 2014).

## A. Count 1

Plaintiffs assert that Beringer, Nelsen, and Foley deprived Callissa of her Fourth Amendment right to be free from unreasonable seizures when Callissa was placed in handcuffs without probable cause.[3] In pertinent part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. The Supreme Court has long recognized a distinction between Fourth Amendment seizures and formal arrests:

> It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.

*Terry v. Ohio*, 392 U.S. 1, 16 (1968). Thus, a seizure is said to occur when "an officer restrains the liberty of an individual through physical force or show of authority." *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003). For purposes of § 1983, a seizure must comport with the Fourth Amendment's general standard of reasonableness. *Id.*

An arrest, by contrast, is a more intrusive seizure that is permissible if

---

[3] Although plaintiffs' complaint states that Wade is a defendant to Count 1 (Docket 1 at 2), plaintiffs state in their briefs that Wade is no longer considered a defendant on this count. Docket 33 at 9 ("Officer Wade does not exhibit any decision making authority and is not a defendant to [Counts I, II, IV, or V]. (Officer Wade is a defendant for Count III frisk claim).").

an officer has probable cause. *United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004). "Probable cause exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.' " *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014) (quoting *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)). The Eighth Circuit has explained, however, that an officer is entitled to qualified immunity even if the officer had only "arguable probable cause" to make an arrest. *Id.* (citing *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012)). " 'Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable.' " *Id.* (quoting *Ulrich*, 715 F.3d at 1059)).

The parties dispute whether Callissa was arrested or merely seized. As the Eighth Circuit has observed, "[t]he standard for determining when police-citizen contact constitutes an arrest . . . is unclear." *Pratt*, 355 F.3d at 1122. Because a determination that the officers had probable cause or even arguable probable cause to arrest Callissa would end the present inquiry, the court will assume Callissa was arrested when she was placed in handcuffs. *See id.* at 1122-23 ("However, if an officer has probable cause, any inquiry into other acceptable justifications for the seizure is largely superfluous . . . when police act upon probable cause to arrest, the term 'seizure' is synonymous with the term 'arrest' under the Fourth Amendment.").

The legal drinking age in South Dakota is 21. In general, state law prohibits anyone from operating a motor vehicle if their blood alcohol content is

0.08 percent or higher. SDCL 32-23-1. For drivers under 21, however, it is unlawful for them to drive, operate, or be in control of a vehicle with a blood alcohol content of 0.02 percent or higher. SDCL 32-23-21. Thus, the legal blood alcohol content level for drivers under 21 is significantly lower than the permissible level for adults over the age of 21.

Plaintiffs acknowledge the vehicle stop itself was permissible and further acknowledge that Foley's detection of the odor of alcohol in the vehicle gave him at least some reason to suspect that Callissa may have consumed alcohol. Docket 33 at 3. Plaintiffs likewise take no issue with Foley's decision to order Callissa out of the vehicle nor his obligation to determine which of the vehicle's occupants may have consumed alcohol. *Id.* at 3-4. Additionally, there is no dispute that when Foley radioed dispatch about the vehicle stop, he stated that he had not yet determined whether the driver (Callissa) had consumed alcohol.

Both Foley and Beringer have attested to the fact that they personally observed Callissa's eyes being watery and that her face was flushed during the stop. Docket 40 at ¶ 21 (affidavit of Mark Foley); Docket 42 at ¶ 11 (affidavit of Bryan Beringer). Plaintiffs contend that those affidavits should not be considered by the court, however, because they were created several months after the stop and are simply "not competent factual citations." Docket 55 at 1. Rather, according to plaintiffs, the only competent evidence is a series of dashboard camera recordings taken during the incident and several narrative reports the officers filled out afterwards. First, and contrary to plaintiffs' assertion, Rule 56 of the Federal Rules of Civil Procedure specifically

contemplates that affidavits may be used to support a party's position on summary judgment if "made on personal knowledge, set out in facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1), (4); *see also Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Plaintiffs have not identified any substantive defect with these affidavits that would render them improper for consideration under Rule 56. Second, regarding the narrative reports, plaintiffs ask the court to make a negative inference. Specifically, because Foley's narrative report does not include a similar statement about Callissa's appearance,[4] the court should conclude either that Foley never made such an observation or that his affidavit is otherwise incredible. But this is not a case, for example, where a party asserts self-contradictory positions in different sworn statements and the jury must be tasked with resolving the discrepancies. *See United States v. Real Prop. Located at 3234 Wash. Ave.*, 480 F.3d 841, 845-46 (8th Cir. 2007). At most, Foley's affidavit contains additional factual information that his narrative report does not. The affidavit is not inconsistent with his narrative report, and neither document purports to stand absolutely to the exclusion of the other. Even drawing all reasonable inferences from the evidence in plaintiffs' favor, they have offered only speculation that the

---

[4] Beringer's narrative report does include his observation. Docket 42-1 at 2. Plaintiffs contend that Beringer admitted this part of his report was a misstatement by citing to testimony taken during Jill's criminal trial for obstruction. Beringer was asked if he would "admit that there are errors in [his] report," to which Beringer responded, "Yes." Docket 57-11 at 20. This admission is too general to support plaintiffs' assertion that the specific reference to Callissa's appearance was a misstatement.

observation in Foley's affidavit is in any way genuinely disputed. *See Gannon*, 684 F.3d at 792 (rejecting the argument that a party's otherwise uncontradicted statement was "self-serving" and therefore should preclude entry of summary judgment); *Albury v. U.S. Postal Serv.*, 530 F.2d 852, 855-56 (9th Cir. 1976) (rejecting the argument that summary judgment should not be entered based only on a mere suspicion that a party may have acted improperly). As the Eighth Circuit observed, "Rule 56 would be nullified by the prevailing party's use of one affidavit and the bald objection by the opposing party to the affiant's credibility." *Lundeen v. Cordner*, 354 F.2d 401, 409 (8th Cir. 1966). Consequently, Foley and Beringer's assertion that they observed Callissa's eyes as watery and her face being flushed is not genuinely disputed.

By the time Callissa was placed in handcuffs, the following additional facts became known: first, that Callissa was under the age of 21; second, that as a driver under the age of 21, Callissa was subject to the reduced blood alcohol limitation on operating a vehicle in South Dakota; and third, that both passengers in the vehicle admitted to consuming alcohol, one of whom was also a minor. These facts, coupled with Foley and Beringer's observations about Callissa's appearance, Foley's detection of the odor of alcohol in the vehicle where Callissa had been present, and the fact that the officers were unable to determine if Callissa had consumed alcohol because she refused to submit to a breath test, provided them with at least arguable probable cause to arrest Callissa for violating South Dakota's prohibitions against underage consumption of alcohol and impaired operation of a vehicle.

Plaintiffs attempt to resist this conclusion by arguing that the officers did not have probable cause sufficiently particularized to Callissa to support an arrest. They rely on *Ybarra v. Illinois*, 444 U.S. 85, 90-92 (1979), where the Court held that probable cause to search a barkeeper and the premises of a tavern did not supply police officers with probable cause to search the tavern's patrons who happened to be present when the search was conducted. The Court stated that "a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another[.]" *Id.* at 91. But plaintiffs' reliance on *Ybarra* is misplaced. This case is more similar to *Maryland v. Pringle*, 540 U.S. 366, 372 (2003), a case involving the arrest of three men who were riding together in an automobile who each denied ownership of cocaine that had been discovered by the police. The Court rejected the defendant's reliance on *Ybarra*, explaining:

> This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), we noted that "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.*, at 304–305, 119 S.Ct. 1297. Here we think it was reasonable for the officer to infer a common enterprise among the three men.

*Id.* at 372. Thus, given the fact that Foley had smelled alcohol in the vehicle, that the officers determined that the two other persons in the vehicle had consumed alcohol, and were unable to determine whether Callissa had done

12

the same, it was reasonable for the officers to infer that everyone in the vehicle may have consumed alcohol.

Plaintiffs, however, suggest an alternative explanation that in their estimation is equally reasonable: that the officers should have concluded Callissa was acting as a designated driver. Plaintiffs note, for example, that although the officers had smelled alcohol in the vehicle, not one of them stated that they had been able to smell alcohol on Callissa or had observed her driving erratically. But probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)). In analyzing claims involving qualified immunity, "the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Based on the totality of the circumstances here, the court concludes that Foley, Beringer, and Nelsen did not deprive Callissa of her right to be free from unreasonable seizures when she was arrested. Thus, they are entitled to qualified immunity on Count 1.

**B.    Count 2**

Plaintiffs contend that Foley, Beringer, and Nelsen deprived Callissa of her Fourth Amendment right to be free from unreasonable seizures because

the officers used excessive force when they placed Callissa in handcuffs.[5] In general, "[t]he right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (citations omitted). But ". . . Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, " 'not every push or shove, even if it may later seem unnecessary' . . . violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

To determine whether the force used by an officer violates the Fourth Amendment, the court must determine if the use of force was objectively reasonable under the circumstances of the case. *Kopp*, 754 F.3d at 600. Some factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Another factor to consider is the result of the force, such as whether the plaintiff has suffered any injury. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003). While the degree of injury is not generally dispositive, when a plaintiff alleges excessive force based on the use of

_____

[5] Although plaintiffs' complaint states that Wade is a defendant to Count 2 (Docket 1 at 3), plaintiffs state in their briefs that Wade is no longer considered a defendant on this count. Docket 33 at 9 ("Officer Wade does not exhibit any decision making authority and is not a defendant to [Counts I, II, IV, or V]. (Officer Wade is a defendant for Count III frisk claim).").

handcuffs the plaintiff must also demonstrate something beyond experiencing minor injury or discomfort. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (explaining that "[h]andcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury or discomfort where the handcuffs are applied.") (internal quotations omitted).

Here, the officers contend that Callissa was handcuffed pursuant to police department policy which dictates that all arrested persons be placed in handcuffs. Plaintiffs respond that their qualified immunity defense must fail because "[t]he officers [sic] decision was based on a policy – not an individualized determination." Docket 45 at 18. But plaintiffs make no allegation or present any evidence that the officers used an extraordinary amount of force applying the handcuffs, nor have plaintiffs alleged that Callissa suffered any injury as a result of being placed in the handcuffs. Without such a showing, plaintiffs' excessive force claim must fail. *Chambers*, 641 F.3d at 907; *see also Stepnes v. Ritschel*, 663 F.3d 952, 961 (8th Cir. 2011) ("Stepnes has produced no evidence that he suffered anything beyond minor injuries due to the handcuffing and thus cannot demonstrate a Fourth Amendment violation."). Consequently, Foley, Beringer, and Nelsen are entitled to qualified immunity on Count 2.

## C.    Count 3

Plaintiffs argue that Foley, Beringer, Wade, and Nelsen deprived Callissa of her Fourth Amendment right to be free from unreasonable searches when she was subjected to a pat-down or frisk before being placed in the patrol car.

In general, a warrantless search of the person is unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) (quoting *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). One of those exceptions is a search incident to lawful arrest. *Id.* (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). "Such a search may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction." *Id.* (citation omitted). Whether the search of Callissa's person falls within this exception depends on whether the officers had at least arguable probable cause to arrest her. *Meehan v. Thompson*, 763 F.3d 936, 946 (8th Cir. 2014) (finding an arrest based on arguable probable cause entitled an officer to conduct a search incident to arrest of the suspect's person). The court has already determined that the officers had at least arguable probable cause to arrest Callissa. Thus, the officers were entitled to conduct a search of Callissa's person incident to her arrest.

Plaintiffs contend, however, that the search was unreasonable because the officers had no reason to believe that Callissa posed a danger to them and that the clothing she wore–a bathing suit, a t-shirt, and shorts–rendered her ability to conceal any weapons or evidence on her person impossible. A similar argument was rejected by the Eighth Circuit in *Meehan*:

> Meehan argues that Thompson's frisk violated her Fourth Amendment rights because he did not reasonably suspect that she was armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S.Ct. 1868. Meehan has confused a *Terry* frisk with a search incident to an arrest. A *Terry* analysis would be appropriate if Thompson had

16

no lawful basis to arrest Meehan; in that scenario, Thompson
would have to provide some additional justification for searching
her. But as discussed above, Meehan's intoxication gave Thompson
at least arguable probable cause to arrest Meehan for her own
safety, and *"a search incident to [an] arrest requires no additional
justification." United States v. Robinson*, 414 U.S. 218, 235, 94
S.Ct. 467, 38 L.Ed.2d 427 (1973).

*Id.* (emphasis added). Thus, because the officers had at least arguable probable

cause to arrest Callissa, their decision to perform the search incident to that

arrest needed no additional justification. Moreover, the duration of the search–

which took place in front of Foley's dash camera–was short, was performed by

a female officer, and involved no more than a brief pat-down of Callissa's

clothing and person. Consequently, the court concludes Foley, Beringer, Wade,

and Nelsen are entitled to qualified immunity on Count 3.

### D.    Count 4

Plaintiffs claim that Foley, Beringer, and Nelsen deprived Callissa of her

Fourth Amendment right to be free from unreasonable seizures when Callissa

was brought to and held in an interview room at the police station while Foley

sought a search warrant.[6] Police may, once they have probable cause to believe

in an individual is involved in criminal activity, detain that individual in order

to apply for a search warrant. *United States v. Nevils*, 897 F.2d 300, 308-09

(8th Cir. 1990) (concluding a detention of an hour and half was justified). As

with an arrest, officers are entitled to qualified immunity when an individual is

---

[6] Although plaintiffs' complaint states that Wade is a defendant to Count
4 (Docket 1 at 4), plaintiffs state in their briefs that Wade is no longer
considered a defendant on this count. Docket 33 at 9 ("Officer Wade does not
exhibit any decision making authority and is not a defendant to [Counts I, II,
IV, or V]. (Officer Wade is a defendant for Count III frisk claim).").

detained if the officers have arguable probable cause to do so. *Ransom v. Grisafe*, 790 F.3d 804, 813 (8th Cir. 2015).

Plaintiffs' argument on this issue is coextensive with their argument on Count 1, that is, they argue that the officers unlawfully arrested Callissa. Because the court has already determined the officers had at least arguable probable cause to arrest Callissa, their decision to hold Callissa at the police station for approximately two hours while Foley sought a search warrant was justified. Therefore, Officers Foley, Beringer, and Nelsen are entitled to qualified immunity on Count 4.

### E.    Count 5

Plaintiffs assert that Officers Beringer, Nelsen, and Foley deprived Callissa of her Fourth Amendment right to be free from unreasonable searches because the officers compelled Callissa to submit to a breath test by procuring a defective search warrant.[7] Although plaintiffs allege that Beringer, Nelsen, and Foley each bear responsibility for this wrong, there are no facts that suggest anyone other than Foley was involved in preparing the affidavit at issue here. Thus, any deficiencies that occurred during the warrant procurement process are attributable to Foley alone.

In *Franks v. Delaware*, 438 U.S. 154, 168-70 (1978), the Supreme Court held that a facially valid affidavit supporting a search warrant may be

---

[7] Although plaintiffs' complaint states that Wade is a defendant to Count 5 (Docket 1 at 4), plaintiffs state in their briefs that Wade is no longer considered a defendant on this count. Docket 33 at 9 ("Officer Wade does not exhibit any decision making authority and is not a defendant to [Counts I, II, IV, or V]. (Officer Wade is a defendant for Count III frisk claim).").

challenged on the basis that it contained deliberately or recklessly false statements to demonstrate probable cause. A warrant that is based upon such an affidavit violates the Fourth Amendment, and "[a]n official who causes such a deprivation is subject to § 1983 liability." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996).

Foley's affidavit recited an overview of the events that occurred during the traffic stop and requested a search warrant to collect a sample of Callissa's breath. Docket 40-1. Foley noted that he detected a strong odor of alcohol coming from within the vehicle, that the two passengers admitted to consuming alcohol, and that the minor driver (Callissa) refused to submit to a breath test. He also explained that an unopened bottle of alcohol was eventually found under the front passenger seat. Foley stated that the officers decided to bring Callissa to the police station while a search warrant was sought, and that the minor passenger had agreed to submit to a breath test which revealed her blood alcohol content was 0.21. Foley also noted that he observed Callissa's eyes were watery and her face was flushed during the stop. Based on Foley's training and experience, he attested that he believed Callissa had been consuming an alcoholic beverage. Magistrate Judge Bosse found Foley's affidavit sufficient and issued a search warrant. Docket 40-2.

As with Count 1, plaintiffs attack Foley's inclusion in his search warrant affidavit of his observation that Callissa's eyes were watery and her face was flushed. Plaintiffs argue that Foley's inclusion of these facts was improper because Foley's narrative report did not contain a similar statement, while only

Beringer's narrative report did. As with Foley's affidavit before this court, Foley's search warrant affidavit is not contradicted by his narrative report. And "[m]ere allegations of deliberate or reckless falsehoods are insufficient." *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009); *see also United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) ("A showing of deliberate or reckless falsehood is not lightly met.") (citation omitted).

Next, plaintiffs contend that Foley's affidavit omitted certain facts. A *Franks* violation based on omitted facts may be shown when "(1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Hawkins v. Gage Cty., Neb.*, 759 F.3d 951, 959 (8th Cir. 2014) (quotation omitted). Aside from a bald allegation that Foley "purposefully ignored evidence," plaintiffs present no showing that Foley acted with the intent to make his affidavit misleading. In order to show Foley acted in "reckless disregard," plaintiffs must also "show that the omitted material would be *clearly critical* to the finding of probable cause." *Id.* (quotation omitted) (emphasis in original). And probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Payne*, 119 F.3d at 642 (quoting *Gates*, 462 U.S. at 243-44 n.13).

First, plaintiffs contend Foley should have included the fact that none of the officers on the scene positively detected alcohol on Callissa's person. Plaintiffs argue that their inability to do so should have negated any suspicion

they may have had concerning whether Callissa consumed alcohol. Second, plaintiffs assert that while Foley's affidavit stated that the bottle of alcohol was found under the front passenger's seat, he did not sufficiently highlight the probability that the bottle may have belonged to the front-seat passenger or the owner. Finally, plaintiffs fault Foley for not including information that may have suggested Callissa was a designated driver, such as her competent driving and positive demeanor.

None of these facts, however, would be clearly critical to the finding of probable cause. Each of plaintiffs' objections is undermined by the fact that the officers detected the odor of alcohol inside the vehicle Callissa was driving and, most critically, were unable to determine whether or not she had consumed alcohol. While two of the passengers admitted to consuming alcohol, and an unopened bottle of alcohol was found under the passenger seat, those facts would not assuage the equally if not more serious possibility that the driver of the vehicle may have been impaired as well. Although the officers had been unable to pinpoint the odor of alcohol on Callissa's person, that does not, as plaintiffs suggest, simply negate their suspicions. And while Foley's affidavit did not include every piece of information he may have known about Callissa, "[a] law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2011). The same is true regarding alleged omissions of exculpatory information. *See Evans v. Chambers*, 703 F.3d 636, 651 (4th Cir. 2012)

("Affiants are not required to include every piece of exculpatory information in affidavits."). Plaintiffs cannot show that any of these omissions could be deemed reckless. Consequently, Foley is entitled to qualified immunity on Count 5.

### F. Count 6

Plaintiffs argue that Foley, Beringer, Wade, and Nelsen deprived Callissa of her Sixth Amendment right to the presence of counsel during the traffic stop and while she was held in the interview room at the police department. In relevant part, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In general, the Sixth Amendment right to counsel is said to attach "when the State initiates an adversary judicial proceeding 'by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Beck v. Bowersox*, 362 F.3d 1095, 1101 (8th Cir. 2004) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). " 'The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Id.* (quoting *Maine v. Moulton*, 474 U.S. 159, 176 (1985)). But if the right to counsel has not attached, "the defendant has no right to the . . . assistance of counsel." *United States v. Edelmann*, 458 F.3d 791, 804 (8th Cir. 2006) (citing *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994)).

As discussed in relation to Counts 1 and 4, the officers had at least arguable probable cause to arrest Callissa and detain her while Foley sought a

search warrant. Although Callissa had been placed under arrest at the scene of the stop, the right to counsel did not attach at that time. *Beck*, 362 F.3d at 1102 ("But the Supreme Court has declined to hold that the right [to counsel] attaches at the time of an arrest.") (citations omitted). Similarly, the right to counsel did not attach by virtue of the fact that Foley sought a search warrant while Callissa was held at the station. *Van Kahl v. United States*, 242 F.3d 783, 789 (8th Cir. 2001). No formal charges were filed against Callissa. Likewise, the government did not instigate a preliminary hearing, file an indictment or information, and Callissa was not arraigned. "The right to counsel 'becomes applicable only when the government's role shifts from investigation to accusation.' " *Edelmann*, 458 F.3d at 804 (quoting *Moran v. Burbine*, 475 U.S. 412, 430 (1986)). Because the government's role never shifted to one of accusation, Callissa's Sixth Amendment right to counsel never attached. Consequently, the officers did not deprive Callissa of her right to counsel.

Perhaps recognizing this shortcoming, plaintiffs attempt to retool their argument as one involving an alleged violation of Callissa's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Plaintiffs raise this assertion for the first time in their response to defendants' motion for summary judgment. *See* Docket 46 at 11. They assert their complaint contains a typographical error. *Id.* ("Count VI and VII contain the error in that – the constitutional violation is the 5th Amendment[.]"). But this abrupt pivot in theory changes entirely the substance of their claim. Moreover, plaintiffs never sought permission from the court to amend their pleadings, and they will not be allowed to do so now.

Therefore, Foley, Beringer, Wade, and Nelsen are entitled to qualified immunity on Count 6.

### G. Count 7

Plaintiffs style count 7 as a Sixth Amendment retaliation claim. Specifically, Jill asserts that she enjoyed a Sixth Amendment right as Callissa's attorney to be present and to represent Callissa, and that Foley, Beringer, Wade, and Nelsen deprived Jill of that right by ordering her to step away or be arrested. By its own terms, the Sixth Amendment applies only to "the accused." Moreover, it follows that the officers could not have deprived Jill of any derivative right as Callissa's counsel to be present (assuming the right exists at all) at a time when Callissa's own Sixth Amendment right to counsel had not attached.

Plaintiffs do not substantiate their argument or explain how this asserted right was clearly established at any point in their briefs. Rather, as with Count 6, they attempt to revamp their allegation as one involving a deprivation under *Miranda* in spite of never seeking permission from the court to amend their pleadings. As with Count 6, plaintiffs will not be permitted to do so. Consequently, Foley, Beringer, Wade, and Nelsen are entitled to qualified immunity on Count 7.

### H. Count 8

Plaintiffs' count 8 is similar to their claim under count 7 with the exception that it is now titled as a Fourth Amendment retaliation claim. Specifically, plaintiffs argue that when Jill was ordered to step aside or be

arrested for her involvement at the vehicle stop, Foley, Beringer, Wade, and Nelsen retaliated against Jill in violation of her Fourth Amendment rights. The Eighth Circuit has recognized that an officer's threat to arrest an individual is a Fourth Amendment seizure. *Vickroy v. City of Springfield, Mo.*, 706 F.2d 853, 854 (8th Cir. 1983). Such a seizure must be reasonable. *Id.* As explained more fully below, the officers had at least arguable probable cause to arrest Jill for obstruction. Thus, the officers' threat to arrest Jill was justified. *Pratt*, 355 F.3d at 1122. ("However, if an officer has [arguable] probable cause, any inquiry into other acceptable justifications for the seizure is largely superfluous."). Consequently, Foley, Beringer, Wade, and Nelsen are entitled to qualified immunity on Count 8.

## I.    Counts 9-12

Plaintiffs assert variously titled but interrelated allegations that Officers Foley, Beringer, Wade, and Nelsen violated Jill's First Amendment rights. Although brought under different clauses of the First Amendment,[8] plaintiffs are substantively bringing a First Amendment retaliation claim. That is, plaintiffs assert that Foley, Beringer, Wade, and Nelsen retaliated against Jill in violation of her First Amendment rights when they ordered her to step aside or be arrested during the traffic stop.

Before addressing this issue, a brief background is warranted. Although

---

[8] Plaintiffs title these claims as a freedom of speech claim (Count 9), a claim that the officers retaliated against Jill for exercising her freedom of speech (Count 10), a petition-the-government clause claim (Count 11), and a claim that the officers retaliated against Jill for exercising her right to petition the government (Count 12).

Jill was threatened with being arrested for obstructing the officers'

investigation during the traffic stop on May 30, 2014, she was not arrested

either at the scene or at a later time that evening. Rather, Jill was indicted on

July 2, 2014, for violating SDCL 22-11-6, South Dakota's criminal statute

prohibiting the obstruction of a law enforcement officer. *See* Docket 39-3. That

law provides in relevant part that:

> [A]ny person who, by using or threatening to use violence, force, or
> physical interference or obstacle, intentionally obstructs, impairs,
> or hinders the enforcement of the criminal laws or the preservation
> of the peace by a law enforcement officer or jailer acting under
> color of authority . . . is guilty of obstructing a law enforcement
> officer . . . . Obstructing a law enforcement officer . . . is a Class 1
> misdemeanor.

SDCL 22-11-6. The complaint in this case was filed on September 4, 2014.

Docket 1. Jill was not arraigned on her state law charge until October 14,

2014, and she did not proceed to trial until January 26, 2015. Docket 39-3.

The jury returned a guilty verdict, and Jill was convicted of the obstruction

charge. According to plaintiffs, Jill did not appeal her conviction.

This history is necessary to address ancillary issues related to plaintiffs'

claims. First, for each of Counts 9-12, plaintiffs' complaint specifically

challenged the conduct of the officers during the traffic stop. Yet, in their brief,

plaintiffs spend considerable effort attacking the validity of Jill's state court

conviction. *See* Docket 46 at 1 ("[Jill] Schaffer's conviction in State v. Schaffer –

Crim 14-179 – contravened constitutional guarantees of free speech and due

process."). The propriety of Jill's state court conviction is not before this court.

Second, in spite of framing each of Counts 9-12 in terms of a violation of Jill's

First Amendment rights at the traffic stop, plaintiffs also devote several pages of their brief accusing the officers of later falsifying information that was put before the grand jury which ultimately indicted Jill. *See id.* at 4 (arguing officers Beringer, Wade, and Nelsen "wrote misrepresented [and] untrue facts of physical interference and delay in their Narrative Reports" and that "[t]hese Narrative Reports were submitted to the Grand Jury for indictment of Attorney Schaffer."). Whether these officers falsified information that was presented to a grand jury in order to secure an indictment against Jill is not before this court. What is before this court, however, is whether the officers threatened to arrest Jill in violation of her First Amendment rights at the time of the traffic stop.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out[.]" *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Plaintiffs must show that: "(1) [Jill] engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). The Supreme Court has explained, however, that there is no "general right to be free from retaliation for one's speech[.]" *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). This is so because the right allegedly violated must be " 'particularized' . . . so that the 'contours' of the right are clear to a reasonable official[.]"). *Id.* (internal citations omitted).

For plaintiffs, that right is to remain free from being seized in retaliation for one's speech. An officer's threat of arrest is a Fourth Amendment seizure. *Vickroy*, 706 F.2d at 854. As such, the seizure must be reasonable. *Id.* The officers here are entitled to qualified immunity on plaintiffs' First Amendment claims, however, if they had even arguable probable cause to arrest Jill when she was seized. *McCabe v. Parker*, 608 F.3d 1068, 1078-89 (8th Cir. 2010) (concluding plaintiffs' First Amendment claims were mooted because members of the secret service had arguable probable cause for plaintiffs' arrest); *Kopp*, 754 F.3d at 602 (finding the officer was entitled to qualified immunity on plaintiff's First Amendment retaliatory arrest claim because the officer had arguable probable cause to effectuate the arrest); *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012) (noting the lack of probable cause is a necessary element of every First Amendment retaliatory arrest claim). The officers contend that they had at least arguable probable cause to arrest Jill for obstructing a law enforcement officer in violation of SDCL 22-11-6.

Here, approximately two minutes elapsed between the time that Callissa met with Foley at the rear of the stopped vehicle and the time when Jill arrived on the scene. Jill immediately proclaimed that she was a lawyer and, in spite of the fact that she did not witness the stop, shouted that the officers did not have probable cause to stop the vehicle. Jill stood between Callissa and the officers and again stated that they did not have probable cause.[9] When Jill was

---

[9] Responding to defendants' statement of undisputed facts, plaintiffs dispute that Jill stood between Callissa and the officers. Compare Docket 38 at

told to step aside and speak with Foley away from the road, she refused to move unless the officers explained what the officers were doing. Plaintiffs acknowledge that "Jill Schaffer asked the officers eight or more times" to explain specifically what about Callissa suggested that she had consumed alcohol. Docket 35 at ¶ 41. Beringer attempted to explain several times that the vehicle smelled like alcohol and that both passengers in the vehicle admitted to consuming alcohol. Jill walked to the stopped vehicle and informed the officers that she could not smell alcohol in the vehicle. This scene largely repeated itself when Nelsen arrived on the scene. Prior to Nelsen's arrival, however, Beringer warned Jill that if she continued to interrupt the officers, Beringer would discuss with Nelsen the possibility of charging Jill with obstruction. When Nelsen arrived, she told Jill that her options were to either step aside and let the officers do their jobs or she could be arrested. Eventually Jill did step aside. Based on the totality of these circumstances, which include not only Jill's spoken statements but her actions and physical presence at the scene of an ongoing investigation, the officers had at least arguable probable cause to believe Jill unlawfully obstructed their investigation. *See, e.g.*, *Walker v. Peterson*, No. CIV. 12-4078-KES, 2013 WL 6173779 at *3 (D.S.D Nov. 20, 2013) (finding at least arguable probable cause to support an arrest based on plaintiff's forceful grabbing of a driver's license from officer's hands and shutting an apartment door to prevent officers from issuing a citation); *State v.*

---

¶ 35 *with* Docket 55 at 10 (responding to ¶ 35). Yet, the dashboard camera videos clearly show Jill standing between Callissa and Officers Foley and Beringer shortly after she arrived.

*Sullivan*, 673 N.W.2d 288, 293 (S.D. 2003) (noting the defendant had obstructed the officers by preventing them from speaking with her son during an investigation); *State v. Dale*, 379 N.W.2d 811, 815 (S.D. 1985) (explaining that SDCL 22-11-6 "does not require that there be a technical or physical assault upon the officers, nor that violent or physical resistance be exerted to constitute the offense."); *State v. Wiedeman*, 321 N.W.2d 539, 541-42 (S.D. 1982) (finding that by standing in the path of an officer and refusing to move after being ordered to disperse from the scene that the defendant violated SDCL 22-11-6). The conclusion that the officers had at least arguable probable cause to arrest Jill for obstruction is only buttressed by the fact that Jill was subsequently tried and convicted by a jury for that very offense. Because the officers had at least arguable probable cause to arrest Jill for obstruction, their mere threat to do so at the time of the traffic stop was reasonable. Thus, Foley, Beringer, Wade, and Nelsen are entitled to qualified immunity on counts 9-12.

## II. Police Chief Matt Betzen

### A. Count 13

#### 1. Official capacity

Plaintiffs assert that Betzen is liable in his official capacity as chief of the Vermillion police department for failing to adequately train, monitor, and discipline his subordinate officers. A claim against a public official in his official capacity is in reality a claim against the entity for which the public official acts as an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In order to maintain plaintiffs' claim against Betzer in his official capacity, they

must demonstrate that the municipality itself caused the constitutional violation at issue. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Under a "failure to train" theory, a municipality may be liable where (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting those training practices, such that the failure to train reflects a deliberate or conscious choice by the municipality; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury. *Id.* (internal citations omitted).

The animating substance of plaintiffs' "failure to train" claim arises from the conduct of Foley, Beringer, Wade, and Nelsen during the police stop. But, as discussed with counts 1-12 of plaintiffs' complaint, neither Callissa nor Jill were deprived of a right protected by federal law or the United States Constitution by those officers. Without an underlying constitutional wrong, there can be no municipal liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (explaining the Court's first inquiry in a § 1983 claim against a municipality is whether there is a causal link between a municipal policy or custom and the constitutional violation); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978) (explaining that § 1983 liability may only be imposed upon a municipality for underlying constitutional violations that are attributable to official municipal policy). Because there is no constitutional wrong that can be imputed to the municipality in the first instance, Betzen is entitled to summary judgment on plaintiffs' official capacity claim.

31

## 2.  Individual capacity

In addition to their official capacity claim, plaintiffs assert that Betzen is liable in his individual capacity as chief of the Vermillion police department for failing to train, monitor, and discipline his subordinate officers. The Eighth Circuit has explained that a supervising official may be held liable for an inferior officer's constitutional violation only "if [the supervisor] directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish*, 594 F.3d at 1001 (citation omitted). As explained with plaintiffs' official capacity claim, plaintiffs have not suffered an underlying constitutional violation. Without such a violation, Betzen cannot be liable in his individual capacity. *See id.*; *see also Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("But a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."). Thus, Betzen is entitled to summary judgment on plaintiffs' individual capacity claim as well.

## CONCLUSION

Defendants are entitled to summary judgment on each of plaintiffs' claims. Specifically, Officers Foley, Beringer, Wade, and Nelsen are entitled to qualified immunity on counts 1-12 of plaintiffs' complaint. Police Chief Betzen is entitled to summary judgment on count 13 of plaintiffs' complaint because there is no underlying constitutional violation for which he can be held liable in his official or individual capacity. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 36) is

granted.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary

judgment (Docket 32) is denied.

Dated September 22, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE